# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN ISHAM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:26-cv-00473 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| CITY OF BELLE MEADE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a "Motion for Preliminary Injunction" (Doc. No. 13, "Motion"), filed by Plaintiff, John Isham. The Motion is supported by the declaration of Plaintiff (Doc. No. 12, "Plaintiff's Declaration"), and a memorandum (Doc. No. 14, "Memorandum").[1] Also accompanying the Motion is a proposed preliminary injunction (Doc. No. 13-1, "Proposed Preliminary Injunction") for this Court proposedly to enter in the event that the Motion is granted. As shown by the Proposed Preliminary Injunction, Plaintiff seeks via the Motion an order enjoining the City of Belle Meade ("Defendant Belle Meade"), which is one of the two defendants in this action,[2] "and those in privity or acting in concert with it, or as its agents," from "[e]nforcing the Stop Work Order at 1025 Chancery Lane until the trial in this matter." (Doc. No. 13-1 at 2). Defendants have filed a response (Doc. No. 16) in opposition to the Motion. Plaintiff has filed a reply (Doc. No. 17) in further support of the Motion, which is supported by the Declaration of

---

[1] Plaintiff's Declaration and the Memorandum were filed in support also of Plaintiff's motion for a temporary restraining order (Doc. No. 11) that was previously denied by the Court in an order (Doc. No. 15).

[2] The other defendant is Mary Samaniego ("Defendant Samaniego"), who is sued in her individual capacity. The Court herein refers to Defendant Belle Meade and Defendant Samaniego collectively as "Defendants."

Jerry Johnson (Doc. No. 18)—the general contractor for Plaintiff working on the construction project at 1025 Chancery Lane. (*Id.* at 1).

For the reasons described below, the Motion (Doc. No. 13) is **DENIED**.

BACKGROUND

This action, which was removed to this Court from Davidson County Circuit Court based on federal-question jurisdiction, (Doc. No. 1),[3] arises out of a dispute over a stop work order ("Stop Work Order") issued by Defendants that prevents construction from taking place on a structure located at Plaintiff's property at 1025 Chancery Lane S., Nashville, TN 37205. (Doc. No. 1-1 at 1-3).[4] In his complaint (Doc. No. 1-1 at 1-27), Plaintiff contends that the Stop Work Order was improperly issued. Plaintiff brings a claim under Tenn. Code Ann. § 29-14-102 seeking a declaratory judgment against Defendant Belle Meade (Count I) (Doc. No. 1-1 at 10-19). Plaintiff also seeks temporary and permanent injunctive relief against Defendant Belle Meade (Count II), enjoining Defendant Belle Meade "from enforcing the Stop Work Order against Plaintiff." (Doc. No. 1-1 at 19). Plaintiff also brings a claim for (alleged) violations of 42 U.S.C. § 1983 against Defendant Samaniego (Count III) (Doc. No. 1-1 at 19-25).[5]

---

[3] In stating the basis for removal to this Court (i.e., the basis for this Court's jurisdiction), the notice of removal (Doc. No. 1) also seemingly refers to the existence of diversity jurisdiction when it asserts that "the amount in controversy exceeds $75,000.00, exclusive of interest and costs." (Doc. No. 1 at 2). But the notice of removal does not establish that there is diversity of citizenship between the parties, as is required for this Court to have diversity jurisdiction (by virtue of 28 U.S.C. § 1332). The Complaint does not speak directly to citizenship because it does not indicate the *domicile* of the two individuals who are parties, and without knowing such domicile it is not possible to know whether there is complete diversity of parties as required for diversity jurisdiction. But if the Complaint suggests anything, it suggests that there is no diversity of citizenship (because it states that at least the *residence* of the individuals who are parties in this action, Plaintiff and Defendant Samaniego, is in Tennessee). (Doc. No. 1-1 at 3).

[4] The Court notes that the property and structure at 1025 Chancery Lane is *not* the site of Plaintiff's current home/residence. (Doc. No. 14 at 10).

[5] Although Plaintiff categorizes its request for "Injunctive Relief" (Count II) (Doc. No. 1-1 at 19) as a "count", "'[i]njunctive relief' is not a cause of action, it is a remedy.'" *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x. 440, 442 n.1 (6th Cir. 2014). Put another way, Plaintiff's request for injunctive relief

Now, via the instant Motion, Plaintiff seeks an order enjoining Defendant Belle Meade "and those in privity or acting in concert with it, or as its agents," from "[e]nforcing the Stop Work Order at 1025 Chancery Lane until the trial in this matter." (Doc. No. 13-1 at 2).

<u>DISCUSSION</u>

Those seeking a preliminary injunction must meet four requirements.[6] They must show a likelihood of success on the merits; likely irreparable harm in the absence of the injunction; that

---

"[is more] appropriately pleaded as relief for a particular claim." *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-00208-CRS, 2015 WL 7431044, at *14 (W.D. Ky. Nov. 20, 2015).

[6] Published Sixth Circuit case law stands unmistakably for the proposition that these four items are factors rather than requirements, except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a preliminary injunction alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g., D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with other (including more recent) Sixth Circuit case law and with Supreme Court cases (including *Winter*) that describe these as all being requirements (i.e., things that *must* be established. *See, e.g., id.* at 328, 329 (Nabaldian, J., concurring) (noting that "[*Winter*]'s language seems clear—a plaintiff *must* establish the factors" and questioning "whether the balancing analysis itself aligns with *Winter*.").

Notably, other courts have likewise treated the four items as requirements (prerequisites), rather than as factors. *E.g., Southern Poverty Law Ctr. v. United States Dep't Homeland Sec.*, Civil Action No. 18-760 (CKK), 2020 WL 3265533, *10 (D.D.C. June 17, 2020); *Transatlantic, LLC v. Humana, Inc.*, 8:13–CV–1925–T–17TBM, 2013 WL 3958361, *1 (M.D. Fla. Aug. 1, 2013).

The Court believes that it needs to choose between the two approaches—even if the substance or the outcome of the Motion does not turn on such choice—because the approach does dictate how a court goes about explaining its analysis and decision on a motion for a preliminary injunction. And the Court believes that it should follow the latter line of cases, i.e., those that treat the standard as involving requirements rather than factors.

First, explaining and applying the standard in terms of requirements is substantially more straightforward than the alternative—which is to explain that the four items are factors to be balanced, except that, well, that's only partially true because actually irreparable harm *is* a requirement (but also, if it exists, *then* a factor to be balanced along with the other factors) and likelihood of success (at least to some minimal extent) is also required. *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) ("Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory."); *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (noting that it is reversible error for a district court to issue a preliminary injunction "where there is simply no likelihood of success on the merits (quoting *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010))). Second, it is easier to articulate a conclusion as to whether requirements are satisfied (which is done in simple yes/no, or satisfied/unsatisfied, terms) than to articulate the outcome of some so-called "balancing" of (mismatched) factors. This is especially true given that case-specific balancing apparently is based in part on some inscrutable sliding scale of required likelihood of success on the merits that depends on the strength of the other three factors. *See, e.g., In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985) ("[T]he degree of likelihood of success required may depend on the strength of the other factors.").

the balance of equities favors them; and that the public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022).

Here, Plaintiff's request for a preliminary injunction falters on the second requirement for issuance of a preliminary injunction: that Plaintiff is likely to suffer irreparable harm in the absence of his requested injunction. *Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction."). The requirement that irreparable harm be likely to occur absent a preliminary injunction issuing is crucial, because "[i]f the plaintiff isn't facing imminent and irreparable injury [absent the requested injunctive relief], there's no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Sch.*, 942 F.3d at 327. In order for the Court to issue a preliminary injunction (or a TRO for that matter), the threatened irreparable harm must be "both [reasonably] certain [to occur] [as well as] immediate," not "speculative or theoretical." *Nacco Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 943 (6th Cir. 2007) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). *See also Advoc. & Res. Corp. v. U.S. Dep't of Agric.*, No. 2:11-CV-00097, 2011 WL 4738250, at *8 (M.D. Tenn. Oct. 6, 2011) ("A plaintiff seeking injunctive relief must demonstrate that irreparable harm is likely in the absence of an injunction, not merely

---

The Court notes that herein it quotes some case law that refers to these items as "factors" and describes them in language that befits factors more than requirements—as for example by referring to the *issue* of *whether* issuing the injunction would harm others (factor-style language) rather than the *requirement* that the balance of equites favors the movant, or by referring to the issue of where the public interest lies (factor-style language) rather than the requirement that the public interest favors an injunction. In so doing, the Court is confident that the astute reader readily will be able to translate the factor-style language into the corresponding language of requirements for purposes of following the Court's analysis herein.

speculative."). Importantly, a "plaintiff's harm [] is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (considering irreparable harm in the context of an appeal of the *denial* of a preliminary injunction).

Plaintiff asserts that if his requested preliminary injunction is not issued, he will suffer several types of harm that he contends are irreparable, namely that (1) the structure at 1025 Chancery Lane will suffer damage due to Plaintiff not being permitted to resume work on that structure; (2) "Plaintiff is [and will be] denied his right to enjoyment or possession of his own land—an irreparable harm" "because enforcing the Stop Work Order locks 1025 Chancery Lane in its presently unfinished state and makes the property functionally unusable"; (3) Plaintiff will face inconvenience from having to maintain two separate residences (his current home and the structure at 1025 Chancery Lane) and from being prevented from moving to and residing at the structure at 1025 Chancery Lane; and (4) Plaintiff will continue to suffer the stress and psychological and emotional harm from "navigating the ongoing management of the unfinished construction" at 1025 Chancery Lane. (Doc. No. 14 at 9-11).

The Court concludes that none of Plaintiff's asserted harms are irreparable. As an initial matter, and with respect to the first (purported) irreparable harm that Plaintiff asserts will result absent his requested preliminary injunction—the damage to the structure at 1025 Chancery Lane—the Court cannot conceive how damage to a structure is not compensable via monetary damages. Plaintiff seems to assert that calculating the monetary loss that he would suffer as a result of damage to the structure at 1025 Chancery Lane would be "exceedingly difficult" to calculate. (Doc. No. 14 at 9). But even "if damages are difficult to calculate, this does not mean that damages are impossible to calculate or that the injury cannot be remedied by money damages." *Blockbuster of*

*Tennessee, Ltd. v. Blockbuster Inc.*, No. 2:06-CV-02599, 2009 WL 10698647, at *4 (W.D. Tenn. Aug. 31, 2009). *See also Cellnet Commc'ns, Inc. v. New Par*, 291 F. Supp. 2d 565, 569 (E.D. Mich. 2003) (noting that even if "monetary damages are difficult to calculate" this does not mean that "the injury is irreparable").

What's more, in Plaintiff's Declaration, Plaintiff puts a minimum monetary value on the damage the structure at 1025 Chancery Lane would suffer absent a preliminary injunction, stating that without an injunction "over $700,000.00 worth of installed cabinetry, trim, hardwood flooring, and sheetrock are reasonably expected to and will sustain damage resulting from the heightened humidity," (Doc. No. 12 at 3), and that his total repair costs to the structure at 1025 Chancery Lane "may exceed $1,000,000.00." (*Id.* at 4). Accordingly, the first harm that Plaintiff advances in his Motion is not irreparable as required for the issuance of a preliminary injunction, because any harm that may result to the structure at 1025 Chancery Lane is plainly compensable with monetary damages. *Overstreet*, 305 F.3d at 578 ("plaintiff's harm [] is irreparable if it is not fully compensable by monetary damages.").

The next (purported) irreparable harm is that Plaintiff supposedly will be denied his right to enjoyment or possession of his own land at 1025 Chancery Lane unless the Stop Work Order is enjoined and Plaintiff is permitted to resume construction on the structure at 1025 Chancery Lane. Plaintiff specifically argues that because the structure at 1025 Chancery Lane will be "lock[ed]" in its "presently unfinished state" by the Stop Work Order, this will render "the property functionally unusable." (Doc. No. 14 at 11). It is true, as Plaintiff contends, that "interference with the enjoyment or possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute." *Consol. Rail Corp. v. State of Mich.*, 976 F. Supp. 1085, 1089 (W.D. Mich. 1996) (quoting *Pelfresne v. Village of*

*Williams Bay,* 865 F.2d 877, 883 (7th Cir. 1989)). And preventing someone from continuing construction of a structure (for example via a stop work order, like *the* Stop Work Order) on a particular piece of property may lead to some amount of interference with one's enjoyment or use of that property in general (rather than legal) terms. However, the Court does not discern that this actually constitutes "interference with the enjoyment or possession of land" *id.*, so as to constitute irreparable harm.

The aforementioned principle that interference with the enjoyment or use of land may constitute irreparable harm is normally stated in terms of enjoining a *trespass* to one's property or enjoining the actual loss of *possession of* or *title to* one's property. *See e.g., United States v. Wilson,* No. 3:09-CV-166-ECR-RAM, 2010 WL 1849338, at *2 (D. Nev. May 6, 2010) ("[Defendant's] continued occupation of the property would cause Plaintiff irreparable harm in the absence of injunctive relief: real property is unique, and [defendant's] continued occupation of the subject property would cause the [plaintiffs] harm that cannot be compensated with money alone."); *7-Eleven, Inc. v. Khan*, 977 F.Supp.2d 214, 234 (E.D.N.Y. 2013) (noting that "it is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law" and holding that the continued *occupancy* of property by another constitutes irreparable harm) (quotation marks omitted); *2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, No. CIV. A. 97-450 JJF, 1998 WL 1469541, at *6 (D. Del. Feb. 4, 1998) (noting that if a continuing trespass was found, the landowners would "clearly suffer irreparable harm from such deprivations of possession and control which cannot easily be established in dollars."); *Celtic Bank Corp. v. Jacobs*, No. A-13-CA-040-SS, 2013 WL 12109028, at *3 (W.D. Tex. Mar. 22, 2013) (finding lack of irreparable harm where there was no threat of "losing [] actual real property" absent an injunction and noting that "[a]t most, [plaintiff] will ultimately recover possession of the land and

may be compensated in money damages for any harm done to the land, buildings, or equipment during the pendency of the litigation"); *Consol. Rail Corp.*, 976 F. Supp. at 1086-87, 1089 (finding irreparable harm in context of dispute over quiet *title* to piece of real property). Here, of course, Plaintiff has not asserted that there is a risk of either trespass to or loss of the property at 1025 Chancery Lane.

What's more, at least one federal court of appeals has explicitly cast doubt on the notion that the "general rule" that "interference with the enjoyment or possession of land is considered 'irreparable'" actually encapsulates circumstances involving interference with *buildings* rather than land (i.e., circumstances where damage or destruction may be inflicted on buildings). *Pelfresne*, 865 F.3d at 883.[7] And Plaintiff does not identify in his Memorandum or Reply any case law to suggest that preventing someone (for example via a stop work order) from continuing construction of a structure on a particular piece of property constitutes interference with the enjoyment or possession of land so as to constitute irreparable harm.

---

[7] Though not binding, the full reasoning of the Seventh Circuit in *Pelfresne* (included immediately below) strikes the Court as persuasive on this point:

> It is also not clear that [the plaintiff] would suffer irreparable injury if a preliminary injunction were not granted. As a general rule, interference with the enjoyment or possession of land is considered "irreparable" since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute. *See, e.g., United Church of the Medical Center v. Medical Center Comm'n,* 689 F.2d 693, 701 (7th Cir.1982) (uniqueness of land "settled beyond the need for citation"). However, it is not clear that a similar rule should apply to buildings located on a given piece of real estate, since the buildings, unlike the land, can be repaired or replaced if injured or destroyed. Although [the plaintiff's] testimony indicates that, in general, the buildings' roofs are intact and their floors are not sagging, it does not suggest any particular reason why these buildings are irreplaceable if [the plaintiff] is awarded money damages after the [plaintiff] razes the structures. We also note that the buildings are not currently occupied; their demolition will not displace any commercial or residential tenants. [The district court's] conclusion that [the plaintiff] has an adequate legal remedy is thus amply supported by the record.

*Pelfresne*, 865 F.2d at 883.

The upshot is that Plaintiff cannot bootstrap harm to a physical building—which is a type of harm that federal courts regularly find compensable via monetary damages (and thus not irreparable), *see e.g., Pelfresne*, 865 F.2d at 883, *McBean v. Guardian Ins. Agency*, 52 F. Supp. 2d 518, 521 (D.V.I. 1999) (damage to home not irreparable harm because harm "can be adequately remedied by an award of monetary damages at a trial on the merits.")—into a claim for irreparable harm resulting from a purported interference with his use or enjoyment of land. Thus, the second harm that Plaintiff advances—that the Stop Work Order interferes with his use and enjoyment of the property at 1025 Chancery Lane—also does not serve to justify Plaintiff's requested injunctive relief.

That takes the Court to the third (purported) irreparable harm that Plaintiff contends he will suffer: the inconvenience Plaintiff will (purportedly) suffer from having to maintain two separate (would-be) residences (his current home and the structure at 1025 Chancery Lane) and from being prevented from moving into and residing at the structure at 1025 Chancery Lane. On this point, Plaintiff specifically contends:

> Any delays resulting from the failure to enjoin the Stop Work Order would be devastating. Plaintiff's house is not presently up to the standards of a Certificate of Occupancy, without which Plaintiff cannot legally reside on the premises. (Verified Compl. ¶ 55.) As such, the longer that the Stop Work Order is enforced, the longer that Plaintiff will have to go before he may use 1025 Chancery Lane as intended—as his home. (*Id.* ¶ 56.) This leaves Plaintiff in a frustrating limbo. Plaintiff and his wife had planned to move their family into 1025 Chancery Lane prior to the start of the 2026-27 school year to minimize the impact upon their children. (Isham Decl. ¶ 6.) Because of the delays, the intended timeline is increasingly impossible, leaving Plaintiff to bear the burden and inconvenience of both maintaining two separate would-be residences (his current home and 1025 Chancery Lane) for far longer than anticipated and preparing to move at an indeterminate and inconvenient future juncture. (*Id.* ¶¶ 6–8.)

> Put otherwise, enforcing the Stop Work Order will prevent Plaintiff from settling his family in their home on the timeline that was amenable to their specific needs. The value of being able to move oneself and one's family into and thus enjoy their home, and the personal cost of being unable to do so for an indefinite period

of time, do not lend themselves to easy quantification. Something is lost in that delay. How much is hard to calculate.

(Doc. No. 14 at 10). As an initial matter, Plaintiff cites no legal authority to suggest that the (purported) inconvenience he will suffer absent a preliminary injunction actually constitutes irreparable injury so as to justify preliminary injunctive relief issuing. Indeed, it is well settled that "[m]ere injuries, however substantial, in terms of [] time and energy necessarily expended in the absence of [an injunction], are not enough [to justify preliminary injunctive relief issuing]," *Griepentrog,* 945 F.2d at 154 (considering irreparable harm in the context of a stay pending appeal), and "[p]ersonal inconvenience is not the irreparable harm that warrants preliminary injunctive relief." *Loc. 553, Transp. Workers Union of Am., AFL-CIO v. E. Air Lines, Inc.*, 695 F.2d 668, 677 (2d Cir. 1982). The Court sympathizes with Plaintiff's frustration as to the inconvenience he will (purportedly) suffer absent his requested preliminary injunction, but mere frustration and inconvenience do not constitute irreparable harm so as to warrant preliminary injunctive relief issuing. And indeed, the Court notes that if a movant's frustration or inconvenience *did* constitute irreparable harm so as to warrant a preliminary injunction issuing, there would be conceivably no civil action that did not see a motion for a preliminary injunction being made.

That takes the Court to Plaintiff's final asserted harm—that Plaintiff will (purportedly) continue to suffer stress and psychological and emotional harm from "navigating the ongoing management of the unfinished construction" at 1025 Chancery Lane. (Doc. No. 14 at 11). Plaintiff asserts:

> To add insult to irreparable injury, navigating the ongoing management of the unfinished construction has caused and continues to cause Plaintiff serious hardship, stress, and other psychological and emotional harm that he would otherwise avoid if the Stop Work Order was not enforced. (Isham Decl. ¶¶ 8–10, 18, 22.) Such emotional and psychological injury is yet another harm that federal

courts routinely deem irreparable. *See Caspar v. Snyder*, 77 F. Supp. 3d 616, 640 (E.D. Mich. 2015) (compiling a list of cases in which emotional or psychological injury constituted irreparable harm).

(Doc. No. 14 at 11). It is true that federal courts sometimes deem emotional and psychological injury irreparable harm so to warrant a preliminary injunction issuing. And the Court is sympathetic to Plaintiff and recognizes that he may be suffering some level of emotional and psychological injury stemming from the consequences of the Stop Work Order. However, federal courts have generally found that for emotional or psychological harm to be the type of harm that supports issuance of a preliminary injunction issuing—i.e., irreparable harm—such emotional harm or suffering must be extreme. *See e.g., Cannon v. Allied Universal Sec. Servs.*, No. 25-CV-01794 (DLF), 2025 WL 3516157, at *2 (D.D.C. July 28, 2025) ("To rise to the level of irreparable harm, emotional suffering must be extreme." (quoting *Santos v. Collins*, Civ. A. No. 24-1759, 2025 WL 1823471, at *8 (D.D.C. Feb. 26, 2025))); *Lore v. City of Syracuse*, No. 00-CV-1833 HGM DEP, 2001 WL 263051, at *5 (N.D.N.Y. Mar. 9, 2001) ("In extraordinary circumstances, some courts have held that emotional harm is irreparable and requires a preliminary injunction" but noting that "in more banal situations, emotional harm is not considered sufficient cause to justify a preliminary injunction.").

This rule only makes sense. For one thing, although it may not always be easy to assign a particular amount of monetary damages as compensation for emotional harm, doing so is generally considered feasible by the law; indeed, juries regularly are asked to do exactly that. For another, if a plaintiff could justify a motion for a preliminary injunction based merely on experiencing (from the alleged circumstances underlying the plaintiff's asserted claims(s)) stress or emotional harm in just *any* amount, then—considering how prevalent such stress (at least in some minimal amount)

naturally is for plaintiffs—a preliminary injunction would morph from being a remedy for extraordinary circumstances into a remedy for commonplace circumstances.

Here, according to Plaintiff's Declaration, the uncertainty resulting from the Stop Work Order is causing "significant stress, anxiety, and other emotional and psychological harm to [Plaintiff] and to [Plaintiff's] family." (Doc. No. 12 at 2). But this assertion does not evince the kind of "extreme" emotional harm that federal courts have found sufficient to warrant preliminary injunctive relief issuing. *See e.g., Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (affirming district court's issuance of a preliminary injunction where district court found that a movant would "suffer irreparable harm in the form of 'very serious or extreme damage to his mental health'" including "suicide or self-harm and 'debilitating symptoms' like paranoid delusions, auditory hallucinations, and 'compulsive ingestion of metal parts'" absent preliminary injunctive relief). In other words, this asserted harm is not the kind of harm—i.e., irreparable harm—that warrants a preliminary injunction.

All told, none of Plaintiff's asserted harms warrant a preliminary injunction issuing. Thus, the Court concludes that Plaintiff has not satisfied one of the requirements for his requested preliminary injunctive relief: a demonstration that he is likely to suffer irreparable harm absent his requested injunctive relief. Therefore, the Court need not and will not analyze whether Plaintiff has satisfied any of the three remaining preliminary injunction requirements given that the Court's finding with respect to any of these other requirements would not unsettle the Court's ultimate conclusion that the Motion must be denied. *See Jones v. City of Monroe, MI*, 341 F.3d 474, 476 (6th Cir. 2003) ("a district court is not required to make specific findings concerning each of the

four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue").[8]

CONCLUSION

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573 (citing *Leary v. Daeschner*, 228 F.3d 729,739 (6th Cir. 2000)). It bears emphasizing why a preliminary injunction is deemed an extraordinary remedy subject to stringent requirements: the party receiving it is treated, while the litigation is ongoing, in some respects as if it had ultimately prevailed on its claims even though it has not yet done so and could not possibly do so until the litigation is concluded. It is no small thing for a party to be treated (even if only temporarily and for a limited purpose) as if it had ultimately prevailed on the merits of its claims when in fact it has not yet done so. *See Doughtie & Co. v. Rutherford Cnty.*, No. 3-13-0209, 2013 WL 3995277, at *1 (M.D. Tenn. Aug. 5, 2013) ("Essentially, [the p]laintiff is asking the Court to order, on the 'front end' of this action, the relief it ultimately seeks in this lawsuit. The Court finds that [the p]laintiff has failed to show the need for this extraordinary relief.").

Therefore, and for the reasons stated herein, the Motion (Doc. No. 13) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[8] Notably, although *Jones* calls the four items "factors" rather than "requirements," it plainly was treating the items as if they could function as *requirements*, inasmuch as it indicates that fewer than all of them (and, for all *Jones* indicates, the absence of even a *single one* of them) could be dispositive.